McFerrin *v.* Carter and Wife.

McFerrin *v.* Carter and Wife.

HUSBAND AND WIFE. *Improvements made by husband upon wife's real estate. Cannot be subjected to husband's debts. When.* Where a husband is shown to have invested money in putting a house and improvements upon a wife's land,

*Held,* That without fraudulent participation upon his part a decree for a sale of the wife's home cannot be had to subject the husband's money so invested to the claims of his creditors.

Cases cited: Ewing *v.* Cantrell, Meigs' Reports, 377–8.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court. W. F. COOPER, Chancellor.

JONES & STEGER for McFerrin.

M. M. BRIEN, Sr., for Carter.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed by McFerrin to enforce collection of a judgment obtained at law, on which there has been a return of *nulla bona,* by subjecting a house and lot in the city of Nashville to the payment of his debt. The relief is based on the allegation that the lot had been purchased and paid for by Carter with his own money, but the title taken to his wife, for the purpose of hindering and delaying his creditors in

collection of their debts. It is stated as a fact, also, in the bill, that Felix Carter, the husband, had, after his purchase, employed mechanics and built a house with other improvements, for which he had paid; but this is not the gravamen of the bill, but it is, that Carter had paid for the lot, that it was his property, and the conveyance to his wife was made only to conceal his property, and defeat the rights of creditors.

We have carefully examined the proof in the case, and while some of the circumstances shown generate a suspicion that there might possibly have been fraud such as is alleged, a suspicion is all that can be predicated of the proof in this aspect of the case in favor of complainants' bill. On the part of defendant it is proven positively that the lot was purchased for his daughter, Mrs. Carter, by her father, and that he furnished the money which was paid for it, his daughter having given her notes for credit payments and not her husband. Without going into a critical examination of the facts, we need but say that we agree with the Chancellor that complainant has failed to make out his case as to the fraudulent character of the conveyance to the wife of Carter.

It is urged, however, that Carter, the husband, is shown to have paid, perhaps, $1,000 towards putting the house and improvements on the place. This is true, but can the home of the wife be sold in order to subject this money to the debt of her husband? We do not think so in a case like the present. The question may well be said to present some difficulties.

McFerrin *v.* Carter and Wife.

In a case of participation in a fraudulent investment of money in the property of the wife, by the wife, the property itself might be sold, she receiving the value of her property before the improvements were put on it, the increased value credited by the improvements, out of the proceeds of the sale. It would have to be a clear case of fraudulent participation on the part of the wife, that would call for the application of this principle, however. The reasoning, as well as the decision of the Court in the case of *Ewing* v. *Cantrell,* Meigs' Reports, 377–8, seems well to support the view that the land itself could not be sold. We can see that some injustice to creditors may be done by this view, but absolute and exact justice in all cases can never be reached by human tribunals. The great injustice that may result to the wife, and the father or giver of the bounty, in the form of a home for a daughter, on the other hand, is to be looked to and duly weighed. The wife cannot prevent the husband building on or improving the land. It would not be a wise policy that would require that she should do so, or subject her home to a sale at the instance of her husband's creditors. The money in his hands could scarcely, by any legal proceedings, be reached by the creditors, so that it is no more out of their reach in a house on the wife's land, than it was before in the husband's pocket. To sell this house from the wife would defeat the father's object, that of securing a home for his daughter, and deprive the family of the home provided by his bounty, and that

22—vol. 3.

for no default of the wife, but on account of an act which she could not have prevented if she had desired. We do not think this case authorizes such a decree. On the whole we affirm the decree of the Chancellor, with costs of this Court.